EPHRAIM CLAYTON v. THE TRUSTEES OF NEWTON ACADEMY.

## Contract.

Where the plaintiff contracted with a committee of citizens to build a school-house on the lands of a corporation, and to pay the expenses a subscription list was made, and it was agreed that the plaintiff should get payment for his work from the parties whose names were on the subscription list, *it was held,* that the corporation was not liable for the work done by the plaintiff, and much less so was a new corporation, created long after the work was done, for the same purposes as the old one.

This was a CIVIL ACTION, tried before *Shipp, Judge,* at June Term, 1886, of BUNCOMBE Superior Court.

The action was to recover the value of work and labor done for defendants, in building an academy, known as the Newton Academy, in the county of Buncombe, about the year 1858.

The plaintiff introduced one Thos. L. Clayton, who swore that his father built the wood work of a house on the land of the defendant, in 1857 or 1858; that he superintended the work, and that this was all he knew about the matter, except what his father had told him.

The plaintiff then introduced one W. W. McDowell, who swore that he, one evening after banking hours, in 1857 or 1858, went out on the streets in Asheville, and without the solicitation of any one, and because he felt an interest in the Newton Academy school, his father having been educated there, and being desirous of educating his sons there, he procured a subscription from the citizens to build the present building, and that shortly afterwards, there was a public meeting in the Court House in Asheville, to consider the necessary steps to take to put up the building. At that meeting, many persons were present. M. Patton, one of the original incorporators, was present. He, M. Patton and W. J. Alexander, were appointed by the meeting a committee to make contracts for the erection of the building. They were instructed to offer the subscription list to the contractors for the erection, and they did so. He bid in the brick work through his partner. Mr. Shackelford and Mr. Clayton bid in the wood work at $1,250. It was agreed that Mr. Clayton, as well as himself, should take the subscription in payment for the work. He was fully paid in the subscription, and knows a part of a list, amounting to over $800, was given by him to Mr. Clayton. It was his understanding that Alexander gave Mr. Clayton a list to make up the balance.

The subscriptions were all good, and were about $3,600 in amount, and it only required about $2,800 to complete the building. The remainder of the subscription, after paying for the work done by Clayton and his firm, was spent in putting up a teacher's house on the grounds. The trustees of the academy had not met for many years, and most of them were dead. They did not know of the subscription, nor did they have anything

to do with the work. Their consent was not asked. It was a movement on the part of the citizens. The trustees of Newton Academy had nothing to do with it in any way. He only collected a part of the subscription list, but it was his fault that he did not get it all. The trustees of the Newton Academy never received the work. The committee never formally accepted it. There was no meeting of the trustees of Newton Academy from 1847 to 1874. When the Legislature appointed new trustees, or some time afterwards in 1874, there was a meeting and new organization. They then went into possession of the house, but never said or did anything looking towards paying for it. They found the house there, and went into it, and that is all. They have had a school there ever since. This is one of the oldest educational institutions in this part of the State, and is just outside of the corporate limits of Asheville.

E. Clayton swore, that he made the contract to do the wood work with a committee, but did not remember who the committee were. Turned over the work to the committee. Contracted to do the work for the committee. Was not paid but about $600. He thought he was to be paid out of the subscription list. Was a subscriber himself to the amount of $100. Thinks he was present at the meeting of the citizens, but not certain. He is now 82 years old.

The plaintiff here closed his case, when his Honor intimated that it was his opinion that there was no evidence to show that the defendant was liable to the plaintiff for his demand.

The plaintiff, in deference to the opinion of the Court, submitted to a judgment of nonsuit, and appealed to the Supreme Court.

*Mr. Geo. A. Shuford,* for the plaintiff.
*Mr. Chas. A. Moore,* for the defendant.

ASHE, J. (after stating the facts). This action is manifestly without merit.

The plaintiff built the house in question, under a special contract made with a committee of the citizens of the county of Buncombe. The funds raised for the purpose of building the Academy was by subscription, and it was expressly agreed between the plaintiff and the committee, as proved by W. W. McDowell, one of the contractors to do the brick work, that Mr. Clayton, the plaintiff, as well as himself, should take the subscription in payment for the work. The subscriptions were all good, and were about $3,600.00, and it only required about $2,800.00 to complete the building. The then trustees of the Academy had not met in many years, and most of them were dead. They did not know of the subscription, nor did they have anything to do with the work. Their consent was not asked. The plaintiff himself testified that he thought he was to be paid out of the subscription list. Had the original trustees all been alive when the building was completed, they would not have been liable to the plaintiff for his work, for it was a special contract between him and the committee of the citizens who had gotten up the subscription for the erection of the building.

There was no privity of contract between the plaintiff and the original trustees, and there being a special contract that the plaintiff was to look to the subscription list for his compensation, they were in no sense liable to him for the work done by him. So if they were not liable, much less are the present trustees liable, who had at the time no corporate existence, and were only brought into existence by an act of the Legislature some twenty-five years after the work was done, under a new organization.

There is no error. The judgment of the Superior Court is affirmed.

No error.                                        Affirmed.